### UNITED STATES v. BRAY.

(District Court, W. D. Missouri, C. D. March 18, 1902.)

RETAIL LIQUOR DEALER—SELLING WITHOUT PAYING TAX.

One may be convicted of carrying on the business of a retail liquor dealer without payment of the required tax, in violation of Rev. St. U. S. § 3242, as amended, though the article is put up in bottles and labeled as an appetizer, and he did not know its nature when he bought it, it in fact containing a large per cent. of alcohol, and nothing of a curative character, and the circumstances of purchases from him being such as to show that his customers are buying it merely as an intoxicant.

Wm. Warner, U. S. Atty., for the United States.
Silver & Brown, for defendant.

PHILIPS, District Judge (charging jury). The defendant stands indicted for carrying on the business of a retail liquor dealer without having paid to the government the required tax. The statute of the United States (Rev. St. § 3242, as amended) under which this prosecution is conducted defines a "retail liquor dealer" to be a person who sells foreign or domestic distilled spirits, wines, or malt liquors in less quantities than five gallons. The question to be answered by your verdict is whether or not the article in evidence, alleged to have been sold by the defendant under the name of "Diggs' Appetizer," comes within the letter and spirit of the statute. The defense is that the article in question is a useful medicinal preparation, manufactured and sold solely for its curative, or supposed curative, qualities as a medicinal preparation. A manufacturer may put up preparations containing supposed curative elements, containing herbs or roots, or other

substances, supposed to possess the virtue of curing or relieving disorders of the human body; and he may use in the preparation thereof such a per cent. or quantity of alcohol or distilled spirits as may, in his honest judgment, be necessary to extract the virtues of such herbs or ingredients employed, and to hold the same in solution, although it may be more or less than is contained in some tinctures. And if such preparation be contained in bottles with appropriate labels, indicating their medicinal qualities, and they are sold by retail merchants in good faith, as a medicinal preparation in the bottle, to be used by the purchaser for such purpose as and where the purchaser sees fit to use it, although such preparation may contain (as shown by analysis) a large per cent. of alcohol, which, if drunk in large quantities, produces an intoxicating effect, such facts alone would not be sufficient to warrant a conviction of the vender for the violation of said statute. But if as a matter of fact such preparation contains a large per cent., say as much as 30 per cent., as indicated by the evidence in this case, of alcohol, and the other ingredients of such bottle consist of nothing more than sugar and water, combined with some other substance like an herb, or the like, which other substance is inoffensive and possessing no curative quality or character, and that such preparation, although sold by the bottle, was sold by the vender as a beverage, or with knowledge of the fact that those purchasing it are buying it merely as a beverage, and because of the spirituous liquor contained in it, to realize its intoxicating or exhilarating influence as a beverage, such facts would constitute a sale of distilled spirits, within the meaning of the statute. The law looks to substance, and not to shadows or forms. This revenue law cannot intentionally be evaded by the use of mere names or catchwords, or disguises. If the manufacturer or retail merchant who sells it knows that the preparation contains 30 per cent. of intoxicating spirituous liquors, and the other 70 per cent. is composed of merely sugar and water and some herb or ingredient of an ineffective character, possessing no quality of a curative virtue, and is aware of the fact that it is being bought by the purchasers as a beverage, who desire it because of its exhilarating and intoxicating character, he is entitled to no more protection under the law than if he were selling weak cocktails or toddies. If such practices are to be indulged under the guise of a printed label, designating the bottle as containing a medicinal preparation of an asserted curative property, and sold under the mere pretext of being a medicinal preparation, knowing that it is being bought by the purchaser merely as a beverage, because of the large per cent. of distilled spirits it contains, and not sold and bought as medicine, the statute under which this indictment is founded would be easily evaded and practically nullified,—as much so as if the party were selling toddies or cocktails made up of whisky, water, sugar, with a slice of lemon or orange, or other palatable vegetable, mixed therewith. Whether or not the defendant had knowledge of the composition of the preparation in question, and knew that it was being sold and bought merely as a beverage, because of the quantity of alcohol it contained, and not for medicinal purposes, is a question of fact, to be ascertained and determined by the jury from all the facts and circumstances in evidence. Although a retail mer-

chant might buy such bottles from a manufacturer under the belief, begotten of representations made to him by the manufacturer, or by the labels placed upon such bottles, that it was a mere patented or prescriptive medicine, yet if, as a matter of fact, such preparation contains a large per cent. of alcohol, not designed, and not necessary, to extract the virtues of any medical herbs or substances employed, and to hold the same in solution, and that the witnesses who have testified in the case were buying it, not for medicinal purposes, but solely because of the distilled spirits or alcohol it contained, that because of this fact his sales of such bottles were greatly increased, this would be a violation of the spirit of the statute in question; and the fact that such bottles bore labels indicating that the contents were medicinal in their character, and possessed curative virtues, would be no protection to him as a retail liquor dealer. Knowledge is a question of fact. And when the circumstances attending the transaction of such sales are of such a character as should excite enquiry on the part of the vender as to the character of the article being sold and the purpose for which it was being bought, such as to excite in a reasonably prudent person a conscious conviction that the article being sold is, because of the fact that it contains such large quantities of alcohol as to make it desirable to the purchaser as an intoxicant, and is being sold and bought on that account, the law authorizes the jury to infer from such facts and circumstances the existence of actual knowledge on the part of the vender. A man, when conscious of the existence of a fact, cannot shut his eyes and say that he does not see it. He is presumed to see and to know that which is obvious to the senses, and the real character of which would be known to him if he would look and think. Although the defendant in this case may not have known when he bought the bottles in question from the manufacturer that they were other than what the labels indicated, yet if in the use and sales thereof he became aware of the fact that the preparation was being bought by his customers, not as medicine, but as a beverage, because of their containing alcohol, and that he was enjoying large sales thereof because of the presence of a large quantity of alcohol therein, which constituted the principal and substantial basis in its use as a beverage, this subsequently acquired information and knowledge should have put him upon enquiry, and an investigation into the real quality and character of this preparation. The analysis made of one of the bottles manufactured by Diggs in his factory at St. Louis, discloses the fact that the half-pint bottles sold by him contained over 30 per cent. of pure alcohol (equal to 63.77 of proof whisky) and .67 per cent. of water, and about 2 per cent. or more of glucose, with some aromatic flavor, to give it color. Some four witnesses testified to having bought large numbers of bottles of this preparation from the defendant or his clerks; that they drank the contents of the bottles, some of them on the premises or near there; that they did not buy them as medicine, but solely as a beverage to drink because of the intoxicating effect; that they contained a large quantity of alcohol; and that the drink was intoxicating in a large degree in the use. And, as evidence that the defendant knew that these bottles contained intoxicants, it appears that complaint was made to him by a parent or parents of some

minors, and he was asked not to sell "the stuff" to them; and defendant, on the witness stand, stated that he refused, and gave orders to his clerks not to sell it to minors, because he did not want them around him "creating a nuisance." In addition to this the label on the bottles, while commending it as a specific for many of the disorders of the human body, contained the suggestive warning not to be used "as a beverage"; thus indicating that the manufacturer knew that it was liable to be used as a beverage, and advising the vender thereof, which was a most cunning suggestion that it could be used by purchasers as a beverage.

The jury returned a verdict of guilty.